**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**VALJEAN MANUFACTURING INC. a** :
**California Corporation, and MARTIN** :
**GRUBER,** :
 :
    **Plaintiffs,** :
 : 03 Civ. 6185 (HB)
        - against - :
 : **OPINION &**
**MICHAEL WERDIGER, INC.,** : **ORDER**
 :
    **Defendant.** :
-----------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

    Three motions are before the Court, two brought by Plaintiffs Valjean Manufacturing Inc. and Martin Gruber (collectively "Valjean") and a cross-motion brought by Defendant Michael Werdiger, Inc. ("MWI"). Valjean's first motion seeks to enforce the Court's Amended Judgment or requests sanctions against MWI. MWI cross-moves for relief from the Amended Judgment. Finally, Valjean moves to strike the Declaration of John A. Slavek (the "Slavek Declaration") filed in support of MWI's cross-motion. For the reasons set forth below, Valjean's motion to enforce the Amended Judgment and/or for Sanctions is DENIED in part, and I require additional briefing to determine a final figure. MWI's cross-motion is DENIED. Valjean's motion to strike is DENIED.

## BACKGROUND

    The lengthy factual and procedural background of this case is available in several earlier opinions from this Court and the Second Circuit, familiarity with which is assumed.[1] I

---

[1] For a more complete factual and procedural background, *see Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean IX*"), 332 F. App'x 648 (2d Cir. 2009) (affirming district court judgment in *Valjean VIII*); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean VII*"), summary order (2d Cir. Aug 27, 2007) (affirming in part and vacating in part *Valjean VI*); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean V*"), 164 F. App'x 7 (2d Cir. 2005) (remanding for district court to clarify certain issues); *Valjean Mfg., Inc. v. Michael Werdiger, Inc.* ("*Valjean VIII*"), No. 03 Civ. 6185, 2008 WL 2208485, at *1–*2 (S.D.N.Y. May 27, 2008); *Valjean Mfg., Inc. v. Michael Werdiger, Inc.* ("*Valjean VI*"), No. 03 Civ. 6185, 2006 WL 1359957, at *1 (S.D.N.Y. May 18, 2006) (addressing issues from Second Circuit decision in *Valjean V*); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean IV*"), No. 03 Civ. 6185, 2005 WL 356799, at *19 (S.D.N.Y. Feb. 14, 2005) (amending prior opinion for calculations); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean III*"), No. 03 Civ. 6185, 2005 WL 221264, at *1–*14 (S.D.N.Y. Jan. 31, 2005) (resolving post-trial issues); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean II*"), No. 03 Civ. 6185,

summarize the relevant portions here.  Valjean and MWI entered a Manufacturing and Security Agreement ("MSA") on October 3, 1994. *See Valjean Mfg. Inc. v. Michael Werdiger Inc.* ("*Valjean II*"), No. 03 Civ. 6185 (HB) 2004 WL 1948752, at *1 (S.D.N.Y. Sept. 2, 2004). Under the MSA, Valjean was to design jewelry that incorporated diamonds and precious metals provided by MWI, and MWI was to mark and sell the finished products (the "Jewelry"). *Id*. Section 5.2 of the MSA provided that "MWI may dismantle any Jewelry which MWI has held in inventory for more than 360 days and sell the component parts thereof and no Valjean Payment shall be made in respect of such scrapped Jewelry."  MSA § 5.2. After disputes regarding MWI's accounting and the apportionment of debt among the parties, MWI terminated the MSA on June 30, 2003.[2] *Valjean II*, 2004 WL 1948752, at *1. Valjean sought damages from MWI for MWI's breach of the MSA. *Id*.

In February 2005, after a Bench Trial and post-trial memoranda, I issued an Order that required MWI to pay Valjean $6,612,486 in damages,[3] plus prejudgment interest from the date of filing, obligated MWI to "reimburse Valjean, pursuant to the terms of the MSA, its portion of the sales of inventory sold after July 31, 2004," and required Valjean to "deliver to MWI by February 15, 2005 all consigned materials currently in the possession of Valjean, Martin Gruber, Fred Gruber or any agent, party or interest thereto." *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean IV*"), No. 03 Civ. 6185 (HB), 2005 WL 356799, at *19 (S.D.N.Y. Feb. 14, 2005).  The Amended Judgment issued in June 2008, after two appeals to the Second Circuit restated that the payments from MWI to Valjean for items sold after July 31, 2004 were to be made as items were sold going forward "pursuant to the terms of the MSA."  Oct. 21, 2011 Mead Decl. Ex. 1, June

---

2004 WL 1948752, at *1–*2 (S.D.N.Y. Sept. 2, 2004) (granting in part and denying in part MWI's motion to dismiss); *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean I*"), No. 03 Civ. 6185, 2004 WL 876056 (S.D.N.Y. Apr. 22, 2004) (granting Valjean's motion to amend the complaint).

[2] Section 12 of the MSA describes the parties' obligations upon the MSA's termination, and specifies that "no termination of this Agreement shall impair any rights or obligations of any party which shall have accrued hereunder. . . ." MSA § 12.1; *see also id.* at §12.1(d) (defining "the failure of the other party to perform the material obligations imposed upon it by [the MSA] in a timely fashion" as grounds for termination); *id.* at §12.2 (indicating that should Valjean terminate the agreement, MWI still has the authority to sell Valjean designs and Valjean will be entitled to payment regarding those designs); *id.* at §12.3 (requiring Valjean to "return to MWI all Diamond Consignments and Precious Metal  Consignments except such as may be required by Valjean to complete pending orders").

[3] I ultimately awarded damages to Valjean in an Amended Judgment on June 23, 2008 in the amount of $6,821,042.66 plus interest for Valjean's portion of the sales from August 13, 2003 to February 18, 2005.  Oct. 21, 2011Mead Decl. Ex. 1, June 23, 2008 Amended J. 2–3.

2

23, 2008 Amended Judgment. To date, Valjean has been paid $98,713. *See* Jan. 4, 2012 Slavek Decl. 4.

Beginning approximately one week before the October 2004 trial, MWI began melting down the Jewelry. Oct. 21, 2012 Regan Decl. Ex. 7–7.1. On average, each item of Jewelry that MWI melted down was approximately 1,539 days old. Jan. 4, 2012 Slavek Decl. ¶¶19(b)–20(a). In total, MWI melted down approximately 67 percent of the Jewelry in its possession during the fourteen weeks before the initial post-trial ruling on January 31, 2005. Oct. 21, 2012 Regan Decl. Ex. 7–7.1.

## DISCUSSION

### I. Valjean's Motion to Enforce Amended Judgment and/ or for Sanctions against MWI

#### A. Compensation for Melted Inventory Is Not Required

Valjean seeks compensation for the Jewelry that MWI scrapped and argues that because that Jewelry is the subject of my judgment in Valjean's favor, it was improper. Pls.' Mem. to Enforce 9–10. I disagree.

"Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2006). Interpretation of court orders, like contracts, is restricted to the "four corners" of the document unless an ambiguity exists. *Id.* My June 23, 2008 Order required MWI to "reimburse Valjean, *pursuant to the terms of the MSA*, its portion of the sales of inventory sold after July 31, 2004." Oct. 21, 2011 Mead Decl. Ex. 1, June 23, 2008 Amended J. 2 (emphasis added). Valjean never sought an order that requested reports on MWI's scrapping activities or curtailed MWI's right to scrap as it is described in the MSA. MSA § 5.2 ("MWI may dismantle any Jewelry which MWI has held in inventory for more than 360 days and sell the component parts thereof and no Valjean Payment shall be made in respect of such scrapped Jewelry."). Although Valjean sought immediate payment of $7 million in projected income from the future sale of the Jewelry, I explicitly rejected this figure when I required payment to occur as MWI sold the Jewelry because I understood that the $7 million figure was speculative. *See Valjean II*, 2005 WL 221264, at *7 ("Both Valjean and MWI recognize that Valjean is entitled to the proceeds earned pursuant to the terms of the MSA after July 31, 2004. However, Valjean's $7,000,000 estimate is too speculative.").

Valjean's arguments that the scrapping was improper and that it ought to be compensated for the scrapped Jewelry are without merit. Valjean first argues that the scrapping was improper because MWI represented to the Court that it was trying to sell the Jewelry. However, what MWI's attorney actually represented to the Court was that its projected future sales were an estimate that depended on whether MWI was able to sell the goods and was paid for such sales. Oct. 21, 2011 Mead Decl. Ex. 8, Dec. 9, 2004 Post-Trial Hrg. Tr. 23: 11–19 ("Some money is being collected as it's collected. And if – and that's a big [I]F then it will be paid. But that's only if Mr. Werdiger believes if anything goes right, if Crescent pays everything, if he's able to sell it all, that's how much would come through that would be attributable to Valjean. But there a lot of big ifs there, and you can't make any guess until it happens."). I previously acknowledged that MWI had the right to scrap, and that "If MWI chooses to scrap the Jewelry, Valjean is entitled to no payment whatsoever." *Valjean II*, 2004 WL 1948752, at *3. Although Valjean cites cases in support of the view that a party may not destroy objects that are the subject of the litigation, the cases cited are clearly distinguishable because here there was an explicit contract that gave MWI the right to scrap unsold inventory after a certain amount of time, MSA § 5.2, *and* an Order that expressly stated that Valjean was to be paid "pursuant to the terms of the MSA," which allows for scrapping.[4] Had Valjean sought and obtained an Order that precluded the scrapping allowed by the MSA, perhaps the result would be different, but having failed to do so, it cannot now complain that it ought to be paid for the scrapped Jewelry.

Because I conclude that MWI had a right to scrap the Jewelry, I must reject Valjean's argument that the scrapping is sanctionable. Pls.' Mem. to Enforce 10. Although MWI's conduct was not sanctionable, I decline MWI's invitation based on Local Rule 83.6[5] to award fees and costs for defending against Valjean's request for sanctions.

---

[4] None of the cases cited involved a contract that explicitly allowed for destruction of the object that was the subject matter of the litigation or a court order that explicitly incorporated that contract. *See, e.g.*, *Savoie v. Merchants Bank*, 84 F.3d 52, 59 n.6 (2d Cir. 1996).

[5] Local Rule 83.6 provides that "[i]f the alleged contemnor is found not guilty of the charges, said person . . . may have judgment against the complainant for costs and disbursements and a reasonable counsel fee."

### B. Compensation for All Post-July 2004 Sales of Indian Inventory Is Not Required

Valjean also argues that it is entitled to share in proceeds for all post-July 2004 Valjean-designed inventory that was manufactured in India ("Indian Inventory"). Pls.' Mem. to Enforce 15.  MWI responds that Valjean is only entitled to the proceeds of Indian Inventory from sales that occurred up to October 25, 2004, the first day of trial. Def.'s Opp'n to Enforce 12.

In my May 2006 Opinion, issued after the Second Circuit remanded, in part, for clarification as to whether post-termination of sales of Indian Inventory were included in the damage award, I clarified my position with respect to the Indian Inventory. *Valjean Mfg. Inc. v. Michael Werdiger, Inc.* ("*Valjean VI*"), No. 03 Civ. 6185, 2006 WL 1359957, at *1 (S.D.N.Y. May 18, 2006).  Under the MSA, "Jewelry" is defined as "each and every piece of jewelry, other than generic jewelry included as part of Nova/MAI Diamonds manufactured by Valjean or its subcontractors for MWI for sale by Nova/MWI." MSA, Definitions.  In *Valjean VI*, I reconfirmed my determination that the Indian Inventory did not fall into the category of Jewelry under the MSA, but rather qualified as Nova/MWI diamonds.[6] 2006 WL 1359957, at *3 n.6 ("Jewelry only encompasses goods made by Valjean or Valjean subcontractors. . . .In my prior Opinion & Order, I found that the Indian manufacturers were not subcontractors of Valjean."). Section 12 of the MSA, which governs the parties' actions in the event of termination, specifically states that "Valjean shall be entitled to receive payments with respect to the sale of . . . Jewelry pursuant to the terms of this Agreement." MSA § 12.2.  As a result, I explained that while Section 12 would "appear to be inapplicable" to the Indian Inventory, and so Valjean would not otherwise be entitled to payment for post-termination sales of Indian Inventory, "both parties agreed and an Order was entered on consent that the MSA would apply to all unsold inventory pending trial." *Id.* at *3.  This is why as MWI argues, Valjean is entitled only to payment for post-termination sales of the Indian Inventory through the commencement of trial.

---

[6] The MSA defines "NOVA/MWI" diamonds as "[A]ny loose diamonds or generic jewelry sold by Nova/MWI through its sales force and invoiced under the Nova/ MWI name to its customer."  MSA, Definitions.

### C. Final Calculations Are Required

Several rounds of briefing and expert declarations have resulted in thoroughly confused final calculations from the parties and not for the first time, I might add.[7] The parties have already spent nearly a full year briefing these motions, and I am reluctant to prolong this process any further. Nonetheless, I simply cannot make a determination as to who is owed what based on the documents that I have received. To facilitate my determination, the parties will each provide a final calculation to the other within 14 days of the date of this Order that reflects their current and final position with respect to the amounts owed, including any agreed upon figures or sub-figures. These calculations will not include the items that I have already discussed and resolved ought to be excluded from the calculations, *i.e.*, amounts allegedly owed due to scrapped inventory and amounts allegedly owed due to sales of Indian Inventory after the first day of trial. The calculations will use the original projected figures for sales arrived at prior to August 1, 2004, as determined in the following Section.[8] The results should be summarized in a chart similar to that provided on page 4 of the Reply Slavek Declaration dated July 12, 2012. Each side will then have an additional 14 days to submit *one* final declaration and *one* final memorandum on no more than 10 pages that explains the reason for the difference in the figures and why their figure is correct. The parties are directed to explain the basis for each figure, including sub-figures, in the Chart, and to ensure that all numbers they provide add up correctly.

---

[7] For example, the original Slavek Declaration states that MWI's calculation of $164,284 in payments due to Valjean as a result of domestic sales between August 1, 2004 and April 22, 2010 is $478,220 less than Valjean's calculation, which is $672,504. Jan. 4, 2012 Slavek Decl. 5. This does not make sense because $672,504 minus $164,284 is $508,220. I found no explanation for this discrepancy. As another example, the Slavek Declaration goes on to state that the difference of $478,220 is attributable to three factors, which reduce the payment due to Valjean by $73,349, $139,021, and $310,980, respectively. *Id.* These three figures do not, however, add to a difference of $478,220, and although a footnote attempts to explain the reasoning, it simply is not clear and I cannot make the numbers add correctly. *Id.* at n.1 ("The difference of $478,220 is not the sum of the cost differences since under Section 5.1 of the MSA, the Sales proceeds in respect of any item of Jewelry shall not be reduced below zero by the MWI Costs associated therewith."). These are just two examples, but in general, the briefs are unclear because several of the numbers in the opening briefs and reports do not match those in the closing briefs and reports, which renders it difficult to follow the parties' reasoning.

[8] By my calculation, the issues that I resolve in this opinion substantially decrease the discrepancy between the final figures provided by Valjean and MWI from approximately $13 million to under $2 million. Although there are, perhaps, some other issues that are resolvable at this juncture, I prefer to do so after the parties have had a chance to provide one another with final figures and to respond to those final figures.

## II. MWI's Cross-Motion for Relief from the Amended Judgment

MWI's cross-motion seeks relief from the amended judgment under Federal Rule of Civil Procedure ("FRCP") 60(b)(6). MWI argues that the Amended Judgment required MWI to pay Valjean for sales that had taken place prior to August 1, 2004, some of which had not been paid for at the time the Judgment was entered, requiring the use of projected rather than actual receipts. MWI Opp'n to Enforce 17. Based on these projections, the Court concluded that Valjean was entitled to payment of $1,504,673 for such sales. The actual receipts, which are available now, indicate that the Amended Judgment overstated MWI's liability by $376,230. Jan. 4, 2012 Slavek Decl. ¶ 22. This is because MWI received a large number of returns from customers and received less than full payment on goods sold to certain customers. Kleinberg Decl. ¶ 26.

FRCP 60(b) permits a judge to grant relief from a judgment. FRCP 60(b)(6), the catch-all provision, provides for such relief for "any other reason that justifies relief" beyond the five enumerated reasons described in FRCP 60(b)(1)–(5). A motion to amend the judgment "must be made within a reasonable time." FRCP 60(c). FRCP 60(b)(6) is a "grand reservoir of equitable power to do justice" in a case not covered by the other 60(b) provisions. *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994) (internal quotations and citation omitted). Rule 60(b) motions are "addressed to the sound discretion of the trial court" and guided by equitable principles. *Velez v. Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002). "[R]elief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Barton v. Troy Annual Conference*, 09 Civ. 0063, 2011 WL 5325623, at *5 (N.D.N.Y. Nov. 3, 2011) (quoting *Transaero*, 24 F.3d at 461) (internal quotations omitted). Courts deny relief "where a party had previous opportunities to act upon a motion or somehow prevent an unfavorable judgment." *Id.* (citing *Velez*, 203 F. Supp. 2d at 334).

No "extraordinary circumstances" justify relief here. *See Katz Comm'ns, Inc. v. Evening News Ass'n*, 705 F.2d 20, 25 (2d Cir. 1983) ("[S]o long as the figure arrived at had a reasonable bases of computation and was not merely speculative, possible or imaginary, the [court] had the right to resort to reasonable conjectures and probable estimates."). I entered my original judgment in February 2005, and it was clear to the parties that a portion of my damage calculation was based on an estimate of future collections as to Jewelry that had been sold

previously. MWI never previously appealed this issue (despite several opportunities) or requested that I alter my Judgment in the event that actual collections indicated that the Court's calculation was too high. There is no basis to do so now.

### III. Valjean's Motion to Strike MWI's Expert Declaration

Valjean's motion to strike the portions of the Slavek Declaration that rely upon sales information related to Indian Inventory sold post-trial is essentially moot. Because I concluded in Discussion Section I.B that Valjean is not entitled to recover for sales of Indian Inventory post-trial, I need not strike any portions of the Slavek Declaration, but will instead disregard the portions that are now irrelevant. Valjean's motion is denied as moot.

### CONCLUSION

I have considered the parties' remaining arguments and find them to be without merit. For the reasons stated above, Valjean's motion to enforce the Amended Judgment and/or for Sanctions is DENIED. This includes Valjean's request for sanctions, Valjean's request for compensation for the melted inventory, and Valjean's request for compensation for sales of post-trial Indian Inventory. Additional briefing, as laid out in Discussion Section II, will be provided to the Court within 28 days of the date of this Order in order to revisit the issue of amounts owed. MWI's cross-motion for relief from the Amended Judgment is DENIED. Valjean's motion to strike the Slavek Declaration is DENIED. The Clerk of Court is directed to close the three open motions and remove them from my docket.

**SO ORDERED**
September 4, 2012
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.